**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roosevelt Irrigation District,<br><br>    Plaintiff,<br><br>v.<br><br>United States of America,<br><br>    Defendant.<br><br>v.<br><br>Salt River Project Agricultural Improvement and Power District, *et al.*,<br><br>    Intervenor Defendants. | No. CV-15-00439-PHX-JJT<br><br>**ORDER** |

At issue is Defendant United States' Motion to Dismiss (Doc. 198, MTD), to which Plaintiff Roosevelt Irrigation District ("RID") filed a Response (Doc. 232, Resp.) and the United States filed a Reply (Doc. 243, Reply). In this Order, the Court will also address Intervenor Defendants Salt River Project Agricultural Improvement and Power District ("the District") and Salt River Valley Water Users' Association's ("the Association") (collectively "SRP")[1] Motion for Summary Judgment (Doc. 196), to which Plaintiff Roosevelt Irrigation District ("RID") filed a Response (Doc. 234) and SRP filed a Reply (Doc. 239). Finally, this Order will address Plaintiff's Motion for Partial Summary

---

[1] As a threshold matter, because the District and the Association filed their briefing jointly, the Court refers to them collectively as SRP throughout.

Judgment (Doc. 211), to which SRP and the United States filed Responses (Docs. 229, Doc. 231) and Plaintiff filed Replies (Docs. 241, 242).

The Court finds these matters appropriate for resolution without oral argument. See LRCiv 7.2(f). For the reasons that follow, the Court will grant the United States' Motion to Dismiss RID's quiet title action.

**I.　BACKGROUND**

The Court has detailed the history of this dispute in several prior Orders, including its September 30, 2017 Order (Doc. 293, Sept. 30, 2017 Order) in the parallel action where Plaintiff seeks a declaratory judgment of its rights to the disputed property. *Roosevelt Irrigation Dist. v. United States*, 15-CV-00448-PHX-JJT. In the -448 matter, both parties previously moved for summary judgment and the Court granted in part and denied in part each Motion, leaving several elements of the dispute to be determined upon resolution of the instant -439 matter.

In this case, Plaintiff filed its Complaint on March 11, 2015, after its related state court action was dismissed. (Doc. 1, Compl.) The state court suggested a federal quiet title action to determine the respective rights of Plaintiff and the United States in 26 well sites, pumping equipment, and pump laterals that are at the heart of each filing in this multifaceted dispute. SRP intervened as a Defendant later in 2015 and has been party to every relevant step of this litigation. (Doc. 29.)

At its core, Plaintiff's argument is that, pursuant to a 1921 contract with SRP, it has the right to continue using the 26 well sites to pump groundwater from lands owned by SRP and used in conjunction with the United States as the Salt River Project. Under the 1921 contract, RID's predecessors and SRP agreed that RID would "operate said pumps, wells, . . . and other works constructed and installed by it, for the term of ninety-nine (99) years." (Sept. 30, 2017 Order at 7.) The contract and its subsequent amendment were approved by the Secretary of the Interior, as required by federal Reclamation law. (*Id.*) Now, at the urging of the Superior Court and in response to the United States' alleged

interest, RID seeks quiet title to the pumping plants.[2] (Compl.) The United States moves to dismiss based on the expiration of the statute of limitations for a quiet title action against the federal government. (MTD).

## II. LEGAL STANDARD

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)).[3] "Where the jurisdictional issue is separable from the merits of the case, the [court] may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill*, 594 F.2d at 733; *see also Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) ("With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction."). The burden of proof is on the party asserting jurisdiction to show that the court has subject matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

"[B]ecause it involves a court's power to hear a case," subject matter jurisdiction "can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002).

---

[2] Throughout the litigation, no party has been precise in their language regarding the various property interests at issue. For the purposes of this Order, the Court will rule as to only that which was purportedly conveyed in the parties' 1928 deed. In that document, SRP transferred 26 "pumping plants, consisting of wells with pumps, motors, house and appurtenant appliances and equipment, and ten (10) certain ditches with appurtenant structures." (Compl. Ex. 3 at 34.) For the purposes of this Order, the Court will refer to the disputed property as the "pumping plants." Importantly, the deed excepted "from the property so conveyed and transferred, however, all headgates, ditches, connections and appliances appurtenant to any or all of said pumping plants or ditches which were constructed or which may be used for the delivery of water from any or all of said pumping plants or ditches to individual tracts of the Salt River Arizona project lands . . . . so excepted to remain in [SRP] or the United States of America." (Doc. 35, Am. Compl. Ex. 3 at 34.)

[3] As the Court explains in this Order, the United States' Motion to Dismiss RID's claim as time barred is jurisdictional in nature because, if granted, it deprives the Court of subject matter jurisdiction over the United States because there can be no effective waiver of the United States' sovereign immunity. (*See infra* pp. 4–5.)

Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513-14 (2006).

## III. ANALYSIS

The Quiet Title Act ("the Act") provides that "[t]he United States may be named as a party defendant in a civil action . . . to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." 28 U.S.C. § 2409a(a). Pursuant to the Act, "the United States, subject to certain exceptions, has waived its sovereign immunity and has permitted plaintiffs to name it as a party defendant." *Block v. North Dakota*, 461 U.S. 273, 275–76 (1983). Waivers of sovereign immunity are to be construed narrowly. *United States v. Nordic Village Inc.*, 503 U.S. 30, 34 (1992) (noting that while the Court has occasionally identified waivers to sovereign immunity, those instances "do not, however, eradicate the traditional principle that the Government's consent to be sued must be construed strictly in favor of the sovereign") (internal citations omitted).

The statute of limitations for a claim under the Act is twelve years from accrual. 28 U.S.C. § 2409a(g). A claim accrues "on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." *Id.* The statute of limitations is retroactive; that is, even if twelve years passed from the accrual date *before* Congress passed the Act on October 25, 1972, the action is time barred. *Donnelly v. United States*, 850 F.2d 1313, 1318 (9th Cir. 1988). Because it could potentially expand the United States' limited waiver of sovereign immunity, courts strictly construe the statute of limitations. *See Block*, 461 U.S. at 287 ("the limitations provision constitutes a condition on the waiver of sovereign immunity . . . we must be careful not to interpret it in a manner that would extend the waiver beyond that which Congress intended") (internal citation omitted).

Moreover, the statute of limitations creates a jurisdictional bar because "[i]f the statute of limitations has run on a waiver of sovereign immunity, federal courts lack jurisdiction." *Skranak v. Castenada*, 425 F.3d 1213, 1216 (9th Cir. 2005). Thus,

"[a]lthough ordinarily the defendant bears the burden of proving an affirmative statute of limitations defense, here the statute of limitations is jurisdictional, and [w]hen subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Kingman Reef Atoll Investments, LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008) (internal citation omitted).

The Act's "knew or should have known" language imparts a test of reasonableness. *California v. Yuba Goldfields, Inc.*, 752 F.2d 393, 396 (9th Cir. 1985). Thus, the Act "does not require that the United States communicate its claim in clear and unambiguous terms," although some courts have concluded that the limitations period is not triggered when the United States' claim is sufficiently vague or ambiguous. *Id.* at 397. The Ninth Circuit has explained that "notice of a government claim that creates even a cloud on [the disputed] title may be sufficient to trigger the limitations period." *Michel v. United States*, 65 F.3d 130, 132 (9th Cir. 1995) (citing *Yuba Goldfields*, 752 F.2d at 394–97).[4]

Here, RID fails to convince the Court that a reasonable plaintiff would not have notice of the United States' interest in the pumping plants prior to the state court action in 2014. (Resp. at 2) (arguing that "RID did not become aware of any alleged federal interest in the Wells until SRP first made that argument in the 2014 state court action."). In fact, the Court finds that there were numerous historical indications of the United States' interest sufficient to put a reasonable plaintiff on notice of a federal cloud on its title.

After first agreeing in 1904 that the two would work together to construct Reclamation projects on arid lands in the Salt River Valley, SRP and the United States

---

[4] *Michel*, among other cases cited by the parties, involves a dispute over a non-possessory interest, such as an easement. 65 F.3d 130; *see also Leisnoi, Inc. v. United States*, 267 F.3d 1019 (9th Cir. 2001). This line of cases raises questions that the Court need not address today, such as when the government's interest in an easement becomes sufficiently adverse to trigger the notice requirement. *See Leisnoi*, 267 F.3d at 1025. The Ninth Circuit has required adversity in non-possessory interest cases but has found in possessory interest cases that "[n]either the language of the statute nor the legislative history of the Act requires a showing of adversity." *Yuba Goldfields*, 752 F.2d at 397. However, *Michel*'s broad statement of the rule for cases involving possessory interests, which it credits to *Yuba Goldfields*, is useful in discerning the Ninth Circuit's formulation of what constitutes notice and the Court relies on it solely for that purpose.

entered into another contract in 1917 in which the United States agreed to "turn over to and vest in [SRP] the care, operation and maintenance of the irrigations works known as the Salt River Project." (Doc. 41, Answ., Ex. 1.) By its own terms, this Agreement had to be approved by the United States Secretary of the Interior, and in fact gave the Secretary the power to inspect the Project at will, to "withhold delivery of water to the project" if payments to the United States were not timely made, and to approve any amendments to the Agreement. (Answ. Ex. 1.) Further, the Agreement required that "all contracts which [SRP] shall seek to execute for the sale or lease of power or power privileges . . . shall be subject to the approval of the Secretary of the Interior." (Answ. Ex. 1 at 4.) In short, on the face of the 1917 Agreement, the United States possessed an undeniable interest in and power to control the use of the land operated by SRP.

In 1921, RID's predecessor in interest, Carrick and Mangham Agua Fria Lands and Irrigation Company ("C&M") agreed with SRP to operate pumping plants in order to drain groundwater from the Project land. (Am. Compl. ¶¶ 9–12.) A later supplemental agreement cemented the relationship between C&M and SRP. (Answ. Ex. 3.) The Supplemental Agreement was created in part to address a requirement for the approval of the United States. (Answ. Ex. 3) ("Whereas, the United States Reclamation Service, by letter . . . has called attention to the fact that in order to comply with [the Warren Act], said agreement should contain a provision to the effect that all water received by the parties . . .").[5]

In 1923, C&M assigned its rights in the 1917 Agreement to the newly formed RID. (Answ. Ex. 2.) On the face of the 1923 Agreement, C&M and RID acknowledged the United States' role in the prior Agreements of 1917 and 1921. The assignment purported to

> sell, assign, transfer and set over unto the said Roosevelt Irrigation District [the 1917 Agreement], made and entered into by and between [C&M] and

---

[5] It is irrelevant for the purposes of this analysis that the Court has determined in the -448 matter that the Agreement is not a Warren Act contract. The water use condition imposed by the Supplemental Agreement is similarly irrelevant. The Court cites this provision only to show that the 1920 Agreement and the Supplemental Agreement were both made pursuant to approval by the United States and that approval was explicitly discussed in both documents.

- 6 -

[SRP] . . . and approved by the Secretary of the Interior on the 26th day of October, 1921, on the part of the United States of America.

(Answ. Ex. 2.)

RID signed this Agreement that expressly noted that the United States had to approve the underlying 1917 Agreement regarding the use and operation of the property. And in doing so, RID also acknowledged the Supplemental Agreement which was entered into specifically to appease the interest of the United States.

The 1928 deed, by which SRP conveyed ownership of the pumping plants to RID, also acknowledges the United States' interest in the plants. The deed specifically provides that it was entered into

> under and in pursuance of the agreement entered into on the 26th day of August, 1921, by and between [C&M] and [SRP], assigned to the grantee herein by the supplemental agreement . . . and shall vest in the grantee each and every right and privilege intended to be conferred upon [C&M] . . . and is made subject to the provisions of said agreements and to the reservation made by the Secretary of the Interior in his approval of said supplemental agreement above mentioned.

(Am. Compl. Ex. 3.)

The deed which conveyed RID's ownership interest in the pumping plants, on its face, was made pursuant to the initial agreement between RID's predecessor[6] and SRP, and the deed reminds both parties of the United States' potential interest. The Court finds that, combined with the preexisting and documented relationship between the United States and SRP, and the explicit need for the United States' approval in two earlier agreements signed by RID's predecessor, the 1923 Agreement and the 1928 deed would put a reasonable plaintiff on notice of the United States' claim. In light of these documents and the notice they should have conveyed to RID, the Court need not address the United States' argument that the reservation of pump laterals for the United States in the 1928 deed provided similar

---

[6] The Act specifically provides that the limitations period is triggered by constructive notice to the "plaintiff or his predecessor in interest." 28 U.S.C. § 2409a(g). Here, given that C&M acquired its interest under the 1921 Agreement in anticipation of forming an irrigation district to which it would assign its rights under the Agreement, there is a particularly close relationship between RID and its predecessor, making it eminently reasonable that any information about the United States' interest would be shared with RID. (*See* Am. Compl. ¶ 10.)

notice, though the Court notes that this argument likely would lend support to the conclusion reached today. (*See* MTD at 11–12.)

Having determined that the limitations period was triggered in 1928 at the latest, the Court finds that RID was time-barred from bringing suit in 2015. However, RID is correct that this decision to dismiss its quiet title claim leaves the status quo unchanged. (Resp. at 6 n.6.) The Court has not adjudicated the merits of the parties' title dispute. Rather, all the Court determines in this Order is that RID cannot succeed in quieting its title against the competing interest of the United States. As explained in *Block*,

> dismissal pursuant to § 2409a(f)[7] does not quiet title to the property in the United States. The title dispute remains unresolved. Nothing prevents the claimant from continuing to assert his title, in hope of inducing the United States to file its own quiet title suit, in which the matter would finally be put to rest on the merits.

461 U.S. at 291–92.

Thus, while this dismissal operates as the final word on RID's quiet title claim, it does not determine the respective rights of the parties in the ongoing dispute over the pumping plants. Nor does it foreclose or resolve any pending arguments in the -448 matter.

**IT IS THEREFORE ORDERED** granting Defendant United States' Motion to Dismiss (Doc. 198).

**IT IS FURTHER ORDERED** denying as moot SRP's Motion for Summary Judgment (Doc. 196) and RID's Motion for Partial Summary Judgment (Doc. 211).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this case.

Dated this 10th day of June, 2019.

Honorable John J. Tuchi
United States District Judge

---

[7] As amended, § 2409a(g).

- 8 -